## COMMONWEALTH BANK & TRUST CO. v. ALTGELT. (No. 6631.)*

(Court of Civil Appeals of Texas. San Antonio. Nov. 30, 1921. Rehearing Denied Jan. 11, 1922.)

1. **Work and labor ⬤⇒9—No recovery on quantum meruit under performed contract providing contingent compensation.**

An agent employed to save property from loss by foreclosure, in consideration of reasonable compensation to be paid when debt was paid, could not recover for partial services performed under a quantum meruit if the debt was not paid.

2. **Limitation of actions ⬤⇒50(3) — Turning over of property to employer on demand held not to evidence repudiation of contract.**

Where an agent, employed by a bank to save the property upon which bank had a second lien for compensation contingent on full payment, purchased the property in his own name and made safe the bank's claim, and later turned over papers and property to the bank on their demand before the debt was fully paid, all necessary services being practically performed and all that was left to do being to accept payment when made on collateral, such demand did not evidence a repudiation on the part of the bank which would start the running of the statute of limitations against an action for compensation.

Appeal from District Court, Bexar County; Robert W. B. Terrell, Judge.

Suit by E. J. Altgelt against the Commonwealth Bank & Trust Company. Judgment for plaintiff, and defendant appeals. Affirmed.

L. B. Wiseman, of Floresville, Henry B. Dielmann, of San Antonio, and Dibrell & Mosheim, of Seguin, for appellant.

Boyle, Ezell & Grover, of San Antonio, for appellee.

COBBS, J. This suit was instituted by appellee to recover $2,500 from appellant upon an alleged contract of employment with the defunct West Texas Bank & Trust Company of which appellant is the successor, based upon services rendered in connection with securing, settling, adjusting, and putting in condition to be collected that certain claim for a large sum of money against William Heuermann secured in 1913 by a second lien upon certain lands in San Patricio county, upon which Thomas M. O'Connor, deceased, had a prior lien for $20,000, upon which, Heuermann having defaulted in its payment, suit was brought and a judgment for $25,000 was obtained thereon, with a foreclosure of the lien upon said property. The pleadings and the statement of the nature thereof set out by either party are entirely too long to copy. As briefly as we can state it, to pass upon the demurrers: When appellee was called in and employed to aid in the collection and adjustment of the debt, the property had been advertised to be sold to satisfy the prior lien. It was alleged in the petition, among other things:

"That the West Texas Bank & Trust Company desiring to protect its indebtedness due by the said Heuermann which was secured by a second lien on the property on which the said O'Connor indebtedness was a first lien, on or about November, 1914, employed plaintiff to act as its agent and trustee in the matter, and it was agreed by and between the said plaintiff and the West Texas Bank & Trust Company * * * that in the event the said indebtedness of the said Heuermann to the said West Texas Bank & Trust Company should eventually be paid, that then the said plaintiff should be paid a reasonable compensation for his services in acting as its agent and trustee in the premises: such compensation to be paid at the time and when said indebtedness due by the said Heuermann to the said West Texas Bank & Trust Company was paid."

It was then alleged that acting in accordance with his said employment he went to Sinton, Tex., where the said property was to be sold under said foreclosure and bid in the property, paying $10,000 in cash furnished by the said West Texas Bank & Trust Company, and charged on the books of the bank to plaintiff as a loan, which he alleged was not in truth and in fact a loan to him, but simply money advanced to be paid on said O'Connor indebtedness, and that while he took the deed to said property in his own name, in truth and in fact it was in trust for the West Texas Bank & Trust Company, and that he also purchased all of the right, title, and interest of the said O'Connor estate in said judgment against said Heuermann for $15,000, for which said $15,000 he executed his three individual notes for the sum of $5,000 each and executed a deed of trust upon the property to secure the payment of the said notes, and said O'Connor estate transferred and assigned to appellee its said judgment against said Heuermann; that said West Texas Bank & Trust Company was not in a position financially to advance the said $15,000 which was necessary to be paid to secure the transfer and assignment of said judgment from the O'Connor estate, and the representative of the O'Connor estate refused to accept the obligations of the West Texas Bank & Trust Company for said $15,000, but offered to take the individual notes of appellee for said amount upon which he would be personally bound, secured by a deed of trust on said property, and that it was necessary that an assignment of said judgment should be obtained for the purpose of gaining time to afford an opportunity to sell said property so that the said West Texas Bank & Trust Company might secure the indebtedness due it by the said Heuermann; that at said time there was a

deplorable condition of the country due to a severe drought, and if said land had been sold outright at forced sale at said time it would not have brought any more than the O'Connor indebtedness and the said West Texas Bank & Trust Company would have lost its indebtedness due it by the said Heuermann, and that plaintiff therefore executed and delivered to the said O'Connor estate his individual notes aggregating the sum of $15,000 upon which he was individually and personally bound, and by reason thereof he was able to secure the transfer and assignment of said judgment, as aforesaid, and to buy in said land for $10,000. It was then alleged that acting in accordance with his instructions and as an agent for said West Texas Bank & Trust Company, he sold a portion of said property so purchased by him at said foreclosure sale for $30,000, taking certain vendor's lien notes which were secured by a lien on said property and also secured by certain other vendor's lien notes on other property. It was then alleged that thereafter, to wit, on or about the 23d day of January, 1915 (said foreclosure sale having been made on or about the first Tuesday in January, 1915), plaintiff and the said West Texas Bank & Trust Company executed a certain instrument in writing, which said instrument recited upon its face that appellee had been employed by the said West Texas Bank & Trust Company to act as its agent in said matter, and reciting that the said plaintiff was holding the title to said property so purchased by him at the foreclosure sale in trust for the said West Texas Bank & Trust Company, and the said instrument was executed for the purpose of declaring and fixing the respective rights and liabilities with reference to said notes and land.

After setting out the contract made with appellee to pay for the services, and to turn back to Heuermann any excess over, after discharging his obligations, appellee then gives a description of the failure of the West Texas Bank & Trust Company and the reorganization thereof by appellant company for the purpose of acquiring and taking over the assets of the West Texas Bank & Trust Company and assuming its obligations; it having received $200,000 out of the state guaranty fund provided for under the bankings laws of Texas, and this claim, with others, thus becoming the property of appellant company for any uncollected part of the Heuermann debt.

Appellant presented by answer general and special exceptions. The special exception objected to the cause of action as presented on the ground that it was upon a contract or agreement upon the alleged assumption of the payment of debts and liability of the West Texas Bank & Trust Company, by the terms of which appellee was employed as the agent and trustee to represent the

West Texas Bank & Trust Company in the collection of this alleged indebtedness, and further answered that long before said indebtedness was all finally paid he had turned over, at the request of appellant to it, the notes and collateral security that he had secured as additional security, conveyed the land, surrendered his agency and trusteeship to it, and had severed his connection with said business, then unsettled, and would not be entitled to recover compensation, if any promised in the alleged contract of employment, but only on a quantum meruit. It denied any liability whatever, averring that all the services rendered by appellee were rendered to the West Texas Bank & Trust Company, and that the appellant purchased all the assets of that company described in plaintiff's petition, and denied any liability to appellee whatever.

The cause was submitted to the court without a jury, and the court rendered a judgment in favor of appellee against appellant for the sum of $2,250, with interest thereon from March 19, 1919, at 6 per cent. and costs aggregating $2,510.

The court, at the request of appellant, made and filed his findings of fact and conclusions of law.

The court did not err in not sustaining appellant's contention embodied in the first assignment of error. The reason assigned is that the cause of action is based upon the alleged assumption of the payment by appellant of the debts and liabilities contingent or otherwise of the West Texas Bank & Trust Company, because appellee was employed as the agent and representative of said bank to collect the Wm. Heuermann indebtedness secured by a second lien on the San Patricio lands, and by such employment he should be paid a reasonable compensation only in acting as the agent and attorney for the bank in the event the said indebtedness should eventually be paid, because it is shown by the averments of the petition that long before the said indebtedness was paid appellee turned over the notes in question and surrendered his agency and trusteeship, and severed his connection with said business while it was still in an unsettled condition, and hence would only be entitled on a quantum meruit.

[1] We do not think this assignment is a proper deduction from the pleading. The assignment itself is not clear or satisfactory. The pleading is a very full statement of all the facts pertaining to the services performed in and about securing and collecting the claim. The appellee in his very full pleading sets out a contract in which he was only to be paid when the claim was paid. It states in detail and very fully the personal services rendered, going over a very long period of time. He not only saved the property from loss by foreclosure and sale under the O'Connor prior lien, but took it over and executed his personal obligation to

the O'Connors for the balance of $15,000 due after paying a cash consideration of $10,000 advanced by the bank at the time. He secured other additional security from Heuermann, which was turned over to the bank either in proceeds therefrom or securities, and he executed to it his own personal note for $6,253.59 to close the transaction on its books. It was not appellee's individual obligation, but part of the Heuermann transaction. Appellee nowhere pleads for a recovery on the quantum meruit, that is, for the value of services rendered to any specific time, but sues for the value of the entire services rendered under the terms of the contract itself, the effect of which pleading was for contingent services under the contract, that is, if the whole debt was collected he was to be paid the reasonable value of the services rendered in contradistinction to the value of services performed for any shorter period than for its ultimate settlement. If the debt was not collected, he would not be entitled to any compensation for partial services performed under a quantum meruit.

There is no merit in the second error assigned, that the claim was barred by the statute of limitation of two years.

Under the terms of the contract as found by the trial court and supported by the evidence, the appellee was to receive no compensation for services performed until the Heuermann debt was fully paid up and settled. That occurred on the 19th day of March A. D. 1919, and this suit was filed on the 30th day of May, 1919.

The third assignment of error is that the court should have found that there was a cancellation of the contract because on the 3d day of July, 1916, the appellee, at the request of appellant conveyed to it the remaining 160 acres of land held by him as trustee and turned over to it all the vendor's lien notes, collateral notes, and other securities procured by him in connection with the Heuermann claim, the effect of which appellant contends was a legal repudiation of the agency of appellee.

[2] There was nothing to show to appellee that appellant was seeking to breach the contract and repudiate the obligation for such valuable services performed for it in and about the collection of that claim or that he would not finally claim compensation when the entire collection was made, in accordance with his contract. Such was the contract, and there is nothing to show waiver or estoppel on the part of appellee. At the time these papers were turned over, all the necessary services practically had been performed that were required of him that secured the debt, and all that was left to do was to accept the payment when made on such collat-

erals. There was nothing to show any effort on the part of the bank to repudiate the agreement. There is nothing unusual in the bank desiring to take over its paper and assets to be held in its own custody, rather than to leave them in the custody of its agent or trustee. Appellee's cause of action clearly matured under his contract for compensation when the last payment was made —it made no difference whether the bank collected the notes without calling on appellee for further service or not. It had the right to do so. The third, fourth, and fifth assignments are overruled.

All the assignments present the same questions practically, that is, that the debt being repudiated by the bank on 20th of July, 1916, the debt was barred by the statute of limitation of two years; and the court erred in not holding that the suit was upon a contract to recover for partial services performed, and the suit if tenable at all was on a quantum meruit, and not upon a contract or agreement executed by performance of its full terms and conditions.

All these issues raised by the sixth, seventh, eighth, ninth, tenth, and eleventh assignments are practically those embraced in the first several assignments discussed, and are overruled.

The contract that appellee had with the West Texas Bank & Trust Company is practically undisputed; that it entitled him to reasonable compensation for the services rendered and to be rendered, and to be paid when the claim was finally paid, no one seriously disputes. The contention of appellant seems to be based upon the idea that because he turned over the property, at appellant's request, held by him as its agent and trustee, so that the bank could check the same up and itself hold possession and receive direct the proceeds of claims that appellee had put in such good and merchantable condition as to need no further efforts on his part to force payment, which appellant claims was a repudiation of appellee's contract, and therefore limitation ran from that time. While the bank might have obligated itself, as it was already, to hold appellee free from his personal obligation to the O'Connor estate, he was not in fact wholly released therefrom until the final settlement and collection of all those obligations. However the bank may have looked upon it or desired its action to be a repudiation of the obligation, it was charged with by its assumption to satisfy the defunct bank's clear obligation.

The petition stated a good cause of action entitling appellee to recover on the contract, and the findings of fact and conclusions of law are supported by the testimony.

There is no reversible error assigned, and the judgment of the trial court is affirmed.